November 29, 1978

**78-62 MEMORANDUM OPINION FOR THE DIRECTOR, PRESIDENT'S COMMISSION ON WHITE HOUSE FELLOWSHIPS**

**Supplementation of Salary of Government Employees (18 U.S.C. § 209)—Propriety of Employer Providing Certain Benefits to Employee Serving as a White House Fellow**

This responds to questions raised by your Office and the General Counsel of an Executive department regarding certain benefits an employer proposes to make available to one of its employees in connection with service as a White House Fellow. The suggested arrangements are embodied in the employer's guidelines on leave of absence contracts for its employees on temporary Government assignments. We are unable to accept as legally permissible a number of its features.

Apparently, the most important aspects of the proposed arrangement from the employee's point of view are those providing for the employer to reimburse her for the cost of temporary living quarters while in Washington and for travel to her home during the year. We understand that her husband will continue to work in New Jersey and live in their home there during the year. The employee points out that her husband's desire to keep his present job and his resulting inability to move to Washington will occasion the trips home, and likewise prevent her from renting the house in New Jersey thereby avoiding lodging expenses for the family in two locations. While we sympathize with the employee's situation, we do not believe that these special arrangements are permissible under 13 U.S.C. § 209.

Whatever the reasons, the decision of the employee to reside in two different locations is a personal one. As a legal matter, § 209, in our opinion, prohibits a private employer from providing at its expense a Federal employee with travel for personal reasons where, as here, that travel is furnished on account of the employee's Federal assignment. Whether the travel is for vacation, family, or other personal reasons is irrelevant for purpose of the statute.

Similarly, we do not believe that the employee may be reimbursed for temporary living quarters in Washington. The payment of a Government

employee's living expenses due to his Government service is a classic example of a supplementation of Government salary prohibited by § 209.

It has been suggested that the employer's rental of an apartment in Washington is merely a payment in lieu of the cost of moving household belongings to Washington. Because payment of moving expenses has previously been authorized by us, the argument proceeds that the payment of living expenses in Washington in lieu of moving costs should also be permitted.

We recognize that our 1976 letter to your predecessor stated that a company may pay a participant's moving expenses to the location of the fellowship assignment and back at the conclusion of the year. Upon reexamination, we no longer believe that the policy of paying all moving expenses conforms to the intent of § 209. However, we see no legal objection to the payment of the actual expenses of returning to the employer's place of business at the conclusion of the fellowship year because the payment of relocation expenses is a rather common practice in the private sector.

However, payment of expenses of moving to Washington to work for the Government presents a different question. As a rule, the Government cannot pay moving costs; newly hired Federal employees must ordinarily bear those expenses themselves. Payment of these expenses by a private firm therefore would bestow a substantial benefit on the individual. When this benefit accrues solely because of Federal service, § 209 prohibits the arrangement.

We recognize that White House Fellows enter Federal service for only a brief period with the expectation of returning to their previous employers. By § 209(c), Congress created an exception from the prohibitions in § 209(a) for special Government employees, who are persons employed or retained for not to exceed 130 out of any ensuing period of 365 days. In view of Congress' express recognition of the unique status of certain short-term employees, it is not legally possible to fashion additional exceptions administratively for other short-term employees who do not fall within that exception.

Nor do we believe that a special construction of § 209(a) is warranted in order to further the purposes of the White House Fellows program. If that program had any special statutory authorization indicating that certain outside financial assistance is permissible, then perhaps modifications in the application of § 209(a) would be warranted. But the program, which is authorized only by Executive order, warrants no implied exception to an act of Congress.

We also recognize that current participants in the White House Fellows program may have relied upon past practice in accepting moving expense reimbursement. But we would suggest that next year's participants be advised in advance of the legal restrictions identified herein.

In the interim, we are unable to extend the reasoning of the 1976 letter to other reimbursements, such as those for apartment rental in Washington. We should point out that the letter did not suggest that every participant in the fellowship program is entitled to some reimbursement from his previous employer, or that the payment can be for a variety of purposes, such as moving expenses, rent, or for some other items. Regardless of the controversy over the legality of paying moving expenses under § 209(a), the payment of a Federal

employee's living expenses while in Washington is, as pointed out above, a classic example of salary supplementation and therefore § 209(a) applies.

It has also been suggested that payment of expenses for temporary quarters in Washington is no different in principle from a firm renting an employee's permanent residence which he vacates during his period of absence as a White House Fellow, which we concluded in the 1976 letter is lawful. We must disagree. When the company arranges for the rent of the permanent residence, or rents the residence itself, the employee should be left in no better position than he would be in if he rented the residence directly to an individual tenant. For example, the employee should bear any rental or management fees entailed in the firm's renting the residence to an individual tenant; and if the arrangement provides for the firm to rent the residence and leave it unoccupied, the fair market rental should be reduced by a reasonable estimate of maintenance and other costs that forseeably will not be incurred.

Implicit in the conclusion stated in our 1976 letter that it is permissible for a company to rent the vacated permanent residence of a White House Fellow was the understanding that the arrangement must be essentially the same as though the residence were rented on the open market and that the employee will therefore not have the use of the residence during the rental period.[1] In this case, however, the family *will* have the use of the permanent residence. The employer could 'not, therefore, properly pay the employee the rental value of the home; this would confer a windfall that would not otherwise result. Thus, the reimbursement of temporary lodging costs in Washington cannot be justified by reference to situations in which the private employer may rent the White House Fellow's permanent residence.

Several other aspects of the employer's guidelines are also troublesome. We may question, for example, the continuation of concession telephone service provided by the company for a person in Government service. Section 209(b) permits a Government employee to continue to participate in a "bona fide pension, retirement, group life, health or accident insurance, profit-sharing, stock bonus, or other employee welfare or benefit plan maintained by a former employer." It may be argued that concession telephone service is a "benefit plan" maintained by the employer. However, the purpose of § 209(b), suggested by the enumeration of benefit plans in the subsection itself, is to permit persons entering Federal service to continue established security arrangements that are often essential to long-range financial planning for the family. *See* R. Perkins, *The New Federal Conflict-of-Interest Law,* 76 Harv. L. Rev. 1113, 1139-42 (1963). Concession telephone service is, we believe, far removed from this purpose.

We also note that the suggestion in the guidelines that a person returning to the employer after Government service would be entitled to vacation days in an amount equal to the difference between what he would have accrued and what

---

[1]Also implicit was the understanding that the employee was prepared to rent the house to a tenant who would reside there, so that the employer would not be paying the employee for a residence the employee intended to leave vacant. In the latter situation, the employer's payment of rent may disguise a supplementation of Government salary.

he actually used (or was paid for) while in Government service is inconsistent with the advice of our 1976 letter. We continue to believe that the accrual of vacation time from a private employer under these circumstances constitutes a supplementation of salary prohibited by § 209. For similar reasons, we do not believe that the employer may pay for sick leave due to any absence on account of service over the amount accrued from the Government, as is contemplated in the guidelines. We do not, however, object to the provision for termination of the leave of absence and reinstatement on the employer's payroll in the event of a long-term absence.

In our view, a problem of salary supplementation also arises in those portions of the guidelines providing that coverage under the basic group life insurance plan and death and pension benefit plans will be calculated on the higher of the employee's Government or his private salary. Section 209(b) permits "continued participation" in a "bona fide" benefit plan maintained by a former employer. The concept of "continued participation" would appear to require that participation is to be based on the employee's private salary under all circumstances. The salary on which these figures are based must in turn be calculated without reference to Government service.

Several other features of the guidelines are unclear. It is provided that the employer will make a lump sum payment equal to the contribution that would have been made to the employer's savings plan had the employee remained on its payroll. To whom is the lump sum to be paid? If the payment is to be made directly to the employee under circumstances in which he would not otherwise be entitled to have access to the funds, this would not appear to be "continued" participation in the savings plan. Similar questions are raised by the provision of the guidelines for payment of the cash equivalent of the Employees Stock Ownership Plan participation the individual would have earned at his previous year's salary. In both these provisions and in the provision dealing with net credited-service, we also have some doubt that an employee actually "continues" to participate in the benefit plans if he does not receive credit for the period of Federal employment until he returns to the company.

A final ambiguity concerns the meaning of the term "educational fees" in the guidelines. Some further justification of miscellaneous reentry expenses mentioned also seems necessary.[2]

LARRY A. HAMMOND
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[2]Public Law 96-174, 93 Stat. 1288 (1979), amends 18 U.S.C. § 209 by providing that it does not prohibit the payment of actual relocation expenses of participants in an executive exchange or fellowship program. *See* H. Rept. No. 96-674 (1979).

270